JASON F. WALKER *v.* MARCUS P. NORTON, *appellant.*

*Statute of frauds.   Original undertaking.   Book account.
Contract.*

The plaintiff, who was the preceptor of an academy, requested the defendant to assist in getting up an exhibition of its students and procure music therefor; and it was understood between them, that the plaintiff would indemnify him for his services and expenditures, a subscription being relied upon for raising the necessary funds. *Held,* that the implied promise arising from the request and understanding was an original one, and not within the statute of frauds, there being no other person liable upon, or in reference to it.

*Held,* also, that for the services performed and expenditures made in pursuance of such request and understanding, a recovery might be had in an action on book account.

The defendant himself had charge of the subscription relied upon for the payment of his services, but upon the facts reported, *q. v., held,* that there was no such neglect of duty or looseness in doing the business, as to deprive him of all claim to compensation for his services.

As a part of the defendant's employment, it was expected and understood that he was to take part as an actor in the exhibition, which he finally refused and neglected to do. *Held,* that as it did not appear that any compensation was expected for the dramatic portion of the service or that this formed any inducement to the other portion of the employment, the refusal to perform as an actor would not prevent a recovery for the other services.

BOOK ACCOUNT.   In offset to the plaintiff's account, which was for the board and tuition of the defendant in the Troy Conference Academy, of which the plaintiff was the preceptor, the defendant presented an account as follows :

" To paid expenses to and from Rutland, &c., preparing
    for exhibition,...... .........................$16  00 
" Paid the Whitehall Band, ...................... ........ 14  00
" Time and services in preparing for the exhibition, pro-
    curing schemes printed, &c.,............. ....... 12  00 "

In reference to this account the auditor reported the following facts :

Some time previous to the close of the summer term, 1854, of the T. C. Academy, and while the defendant was boarding there with the plaintiff, an exhibition of the students was had, and the defendant performed the services and made the expenditures as charged

at the request of the plaintiff, and upon the understanding between the parties that if the defendant would assist in getting up, and would take part in said exhibition, that the defendant should loose nothing, but should be indemnified by the plaintiff for his services and expenditures. In pursuance of said understanding, the defendant employed a band of music for said exhibition, and had been compelled to pay them for their services on that occasion the sum of fourteen dollars, and he performed services and made expenditures in the preparation of said exhibition, upon the understanding aforesaid, to an amount sufficient to pay the plaintiff's account against him, but the defendant declined and refused to go on or to take any part in said exhibition as an actor, and did not, although it was expected that he would at the time of entering into said understanding.

The exhibition was principally an affair of the students, and they had charge of the necessary preparation and arrangements, and to meet the expenses the students and all interested relied on subscriptions obtained for that purpose. The students, in carrying out their arrangements for said exhibition, appointed three committees, on one of which they appointed the defendant, and the defendant as such committee took charge of the subscription paper referred to, and collected the money subscribed so far as the same was paid, and disbursed the same in paying said exhibition expenses, but the amount of said subscriptions and the collections and disbursements that were actually made by the defendant did not appear. At the close of the school and exhibition the subscription paper was in the hands of the defendant, and at that time all expenses connected with the exhibition, that had been incurred, had been paid except the three items in the defendant's account, and the amount charged as paid the band was due, and the plaintiff at the time offered to pay them, but the defendant then said that the subscription was partly uncollected, and for that reason it was not then paid by the plaintiff, and remained unpaid until the commencement of this suit when the defendant paid it, and charged it to the plaintiff. When the defendant left, which he did soon after the close of the term, he took with him the subscription paper, and, soon after he returned home, voluntarily destroyed it,

supposing that all had been collected upon it that could be. He kept no entries of the money collected by him on said subscription, or of the amount paid out except as appears by his account attached, and he never rendered to the plaintiff any account thereof, nor was there any evidence to prove the amount subscribed or collected by the defendant or of his disbursements, except the testimony of the defendant.

Upon the foregoing facts the auditor found that the defendant was entitled to be allowed for the value of his services, and for the expenditures made and charged in his account against the plaintiff, and that there is nothing due to either party to balance book accounts; and upon the report of the auditor, the county court, September Term, 1856, — PIERPOINT, J., presiding, — rendered judgment for the defendant. Exceptions by the plaintiff.

*J. B. Beaman,* for the plaintiff.

I. The understanding between the plaintiff and the defendant, that the latter should lose nothing, but should be *indemnified* by the plaintiff, was clearly a collateral undertaking; *Aldrich* v. *Jewett,* 12 Vt. 135; *Smith* v. *Watson,* 14 Vt. 432; *Smith* v. *Hyde,* 19 Vt. 54.

II. The defendant's claim is one for damages as indemnity under a *special contract,* and as such is not a proper subject of book charge; *Pierce* v. *Smith,* 16 Vt. 166; *Bailey* v. *Bailey,* 16 Vt. 656; *Scott* v. *Lance,* 21 Vt. 507.

III. But whether the defendant's claim was one for indemnity or for services and disbursements as the plaintiff's agent, and doing the plaintiff's business, he was required to keep at least an account of his receipts and disbursements, so that it might be known that the plaintiff did not suffer by his negligence; Story's Agency, secs. 332, 333, 348, 203, 204, 205, 208.

IV. The destruction of the subscription papers by the defendant, taken in connection with facts stated by the auditor, should be held such negligence and misconduct as to amount to a forfeiture of any claim he might have had; Story's Agency, as above; 1 Gr. Ev. 109, n.; 12 Wendall 173.

V. The auditor expressly finds the fact that the defendant failed

and refused to perform the condition of the contract on which depended his right to recover in this or any form of action; *Smith* v. *Hyde*, 19 Vt. 54; 1 Ch. Pleadings 313, 317 and note.

*S. H. Hodges* and *D. E. Nicholson*, for the defendant.

The opinion of the court was delivered by

REDFIELD, CH. J. The questions in this case arise upon the defendant's account. It is claimed:

1. That the plaintiff's undertaking was merely collateral, and so within the statute of frauds. It is no doubt true that contracts of indemnity, or to pay upon condition that the promisee does not receive pay in some other way, are within the statute of frauds. But this is upon the ground that it is an agreement to answer for the " debt, default or miscarriage of another," in the very terms of the English statute of frauds. But when no other person is liable for the same debt, the case is not within the statute, although the party may expect to obtain pay from some other fund which fails. As if a teacher be hired to teach either a public or private school to be paid a certain price if, in one case the public money do not pay, or the other the tuition do not pay, this is an original and not a collateral undertaking, although it is conditional in some sense. Such is the present case. The plaintiff was to pay what the subscription did not, and it was an original promise.

2. We think the service was properly chargeable to plaintiff in the first instance, subject to what might be obtained upon the subscriptions, and may therefore be recovered in this action. It is not a claim for *damages*.

3. There does not seem to have been any such neglect of duty in regard to keeping the account, or collecting the subscriptions, as to deprive the defendant of all claim to compensation. If any loss accrued in consequence, it should fall upon the defendant. And in regard to doubts raised by the loose manner of doing the business, they should be solved against the party causing them. But he does not thereby forfeit all claim.

4. In regard to the defendant's refusal to take part in the exhibition as an actor, it would seem from the report, in every view,

that it was expected he would, and that he finally refused to do so. But it does not appear that the contract was entire, or that any compensation was expected for the dramatic portion of the service, or that this had in the plaintiff's mind any connection with the employment, or formed any inducement to employ him in the other portion of the service. If not, the refusal to perform as an actor is no ground of reducing the compensation for the other services. And destroying the subscription is matter of evidence merely, in which view it seems to have been looked upon by the auditor. The case seems, from all we can learn, to have been correctly decided.

Judgment affirmed.